## Unemployment Compensation Board of Review

RENO, Attorney General, March 30, 1939.—We have your request to be advised as to whether or not the Unemployment Compensation Board of Review can be replaced by new appointees of the Governor. A single legal question is presented: Has the Governor the power of removal?

This board was created by the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, which provides in section 203 as follows:

"(a) There is hereby created in the department an Unemployment Compensation Board of Review. The board shall consist of three members nominated and appointed by the Governor, by and with the advice and consent of two-thirds of all the members of the Senate, for terms of six years each, and until their successors shall have been appointed and qualified, except that the terms of the members first taking office shall expire on July first, one thousand nine hundred thirty-nine; July first, one thousand nine hundred forty-one; and July first, one thousand nine hundred forty-three, respectively, as designated by the Governor at the time of appointment and until their successors shall have been appointed and qualified. The Governor shall designate one of the members as chairman. Vacancies in said board shall be filled

for the unexpired terms. The chairman of the board shall receive a salary at the rate of nine thousand dollars per annum. The other members of the board shall receive salaries at the rate of eight thousand five hundred dollars per annum. Such salaries shall be paid from the Administration Fund. Two members of the board shall be a quorum, and no action of the board shall be valid unless it shall have the concurrence of at least two members. A vacancy on the board shall not impair the right of a quorum to exercise all the rights and perform all the duties of the board.

"(b) The board may appoint a secretary to hold office at its pleasure. Such secretary, if appointed, shall have such powers and shall perform such duties, not contrary to law, as the board shall prescribe, and shall receive such compensation as the board, with the approval of the Governor, shall determine.

"(c) The board shall be a departmental administrative board, and shall have all the powers and perform all the duties generally vested in, and imposed upon, departmental administrative boards and commissions by The Administrative Code of one thousand nine hundred twenty-nine and its amendments.

"(d) It shall be the duty of the board to hear appeals arising from claims for compensation, adopt, amend or rescind such rules of procedure, undertake such investigations, and take such action required for the hearing and disposition of appeals as it deems necessary and consistent with this act. Such rules of procedure shall be effective in such manner as the board shall prescribe and shall not be inconsistent with this act. Any investigation, hearing or appeal which the board has power to undertake, hold, hear or determine, may be undertaken, held or heard by or before any one or more of the members of the board, but any determination, ruling or order of a member or members upon any such investigation, hearing or appeal undertaken, held or heard by him or them, shall not become and be effective until approved and con-

firmed by at least a quorum of the board. The chairman of the board, or his representative, shall have the power as often as he may deem the work of the board requires to designate the time and place for the conducting of investigations, hearings and appeals, and to assign cases to a member or members for such purposes.

"(e) The Governor shall appoint and fix the compensation of such referees as may be deemed necessary with power to take testimony in any appeals coming before the board.

"(f) The board shall submit to the department a biennial report concerning the performance of its powers and duties and shall make such recommendations for the improvement of its service and the amendment of this act as it deems proper."

It is clear that the statute designates that the three members of the Board of Review shall be nominated and appointed by the Governor, by and with the advice and consent of two thirds of all the members of the Senate. There appears to be no provision for removal in the act.

Article VI, sec. 4, of the Constitution, PS Const. p. 348, provides as follows:

"All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

In Commonwealth ex rel. v. Likeley, 267 Pa. 310, the Supreme Court stated that the above section of the Con-

stitution provides for three methods of removal of public officers:

"... on conviction of misbehavior or crime, at the pleasure of the appointing power, and for reasonable cause on the address of two-thirds of the senate. All officers are subject to the first kind, *appointed officers to the second,* and elected officers to the third." (Italics supplied.)

In Georges Township School Directors, 286 Pa. 129, 133, it was held that "in so far as appointive officers are concerned, there is the right, under the provision cited [Constitution, art. VI, sec. 4], on the part of the one selecting to remove at his own pleasure".

The question arises as to whether or not the members of the Board of Review come under the category of "appointive officers" that "may be removed at the pleasure of the power by which they shall have been appointed".

It seems pertinent to differentiate between legislative, judicial, ministerial, executive, and administrative authority or power.

" 'Legislative authority' is made use of for the purpose of announcing the law applicable to future cases": 2 Words & Phrases, 4th Series, p. 556.

"Inquiry as to whether rates which have been charged and collected are reasonable constitutes a 'judicial act', while prescribing rates which shall be charged in the future constitutes a 'legislative act' ": 2 Words & Phrases, supra, p. 483.

"In general 'judicial authority' is exercised for the purpose of determining the rights or liabilities of parties according to law, with respect to transactions already had between them": 2 Words & Phrases, supra, p. 484.

In other words, the legislature announces the law and policy *for the future* while the judiciary interprets law *already in existence.*

"Judicial authority" is distinguished from "ministerial" as follows:

"Official action is 'judicial', where it is the result of judgment or discretion, and is 'ministerial' when it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes the time, manner, and occasion of its performance with such certainty that nothing remains for judgment or discretion": 2 Words & Phrases, supra, p. 483.

In other words a "ministerial act" is one in which there is an absence of judgment or discretion. In considering executive authority, we find:

"In government 'executive' is distinguished from 'legislative' and 'judicial'; 'legislative' being applied to the order, or organs, or government, which makes the law; 'judicial' to that which interprets and applies the laws; 'executive' to that which carries them into effect": 3 Words & Phrases Judicially Defined, p. 2567.

The "executive" power is the power to execute the laws and is vested in the Governor and the administrative officers of the State and of the subdivisions thereof: 3 Words & Phrases, 3d series, p. 419.

"Officers that are neither judicial nor legislative necessarily belong to the executive department of government, and are 'executive' or 'administrative' officers; those terms being equivalent and, since the general scope of the duties of county commissioners is the administration of the county affairs, they are 'administrative officers' rather than judicial or legislative officers": 1 Words & Phrases, 3d series, p. 277.

The words "executive" and "administrative" are used as synonymous or interchangeable terms: 1 Words & Phrases, 4th series, p. 101.

The industrial commission created to administer The Workmen's Compensation Act of June 2, 1915, P. L. 736, is an "administrative body": 1 Words & Phrases, 4th Series, p. 101.

The board members and the reviewing board, created by the Workmen's Compensation Act, do not constitute

courts, but only administrative tribunals: Ahmed's Case, 278 Mass. 180, 179 N. E. 684, 686; 1 Words & Phrases, 4th Series, p. 101.

This differentiation is important.

In Commonwealth ex rel. v. Benn, 284 Pa. 421, The Public Service Company Law of July 26, 1913, P. L. 1374, provided for the appointment of members of the Public Service Commission by the Governor, by and with the advice and consent of the Senate, and for removal by the Governor, by and with the consent of the Senate. It was held that because the Public Service Commission was "an administrative arm of the legislature", or a committee of the legislature, since its function of rate-making was legislative in character, the members of the commission were appointed by the legislature, and the legislature, by statute, had the right to prescribe the method of removal. Since the Public Service Commissioners were representatives of the legislature, and not of the executive, in his appointing power the Governor was an agent of the legislature.

Consider also Commonwealth ex rel. v. Clark et al., 331 Pa. 405 (Bridge Commission case).

The crux of the Benn case is based on the point that the Public Service Commission is an arm of the legislature. The Board of Review, by no stretch of the imagination, could be considered to be an arm of the legislature.

It has been held that, under the common law, the appointing power may remove ministerial officers at pleasure, either for cause or without cause, and of its own motion, where such appointive officers are not included or covered by the constitutional provision: Glessner's Case, 289 Pa. 86.

In Lane v. Commonwealth ex rel., 103 Pa. 481, there was an attempt by the legislature to control the right of removal. Appellant there contended that since, under the act in question, the Governor could appoint only by and with the advice of the Senate, the latter body on general principles was part of the appointing power, without

regard to the character of the office involved; this broad contention was negatived. The particular office in controversy in the Lane case belonged to a branch of government separate and distinct from the legislature itself; therefore, when the latter authorized the Governor to fill the position, he was made the appointing power, and the constitutional provision as to the right of removal at the pleasure of the appointing power immediately applied.

The fact that, in designating the Governor as the appointing power, the statute for that purpose used the phrase "by and with the advice and consent of the Senate", when viewed in connection with the office there involved indicated no purpose on the part of the legislature to reserve, in any sense, the appointing power to itself, for the office with which the statute dealt was not one connected in any way with the work of the general assembly.

In Commonwealth ex rel. v. Clark et al., 327 Pa. 181, the Philadelphia Civil Service Commission was appointed by the city council. The Act of March 30, 1937, P. L. 158, created a new council of five members, two of whom were to be appointed by the mayor, two by the city controller, and the fifth by these four members. Quo warranto proceedings were commenced and an assignment of ouster entered against the new commission. The assignment of ouster was affirmed. The court held (p. 188):

"The right to remove 'appointed officers' (and civil service commissioners 'elected' by city council fall within that classification: see *Com. ex rel. v. Likeley*, 267 Pa. 310) is conferred, not upon the appointing power, but upon 'the power by which they *shall have been appointed.*' [Italics added.] That the constitutional method of removal provided in Article VI, section 4, is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient is no longer open to question (*Bowman's Case*, 225 Pa. 364; *Com. ex rel. v. Hoyt*, 254 Pa. 45; *Com. ex rel. v. Reid*, 265 Pa. 328; *Com. ex rel. v. Benn*, 284 Pa. 421; *Com. ex rel. v. Kelly*, 322 Pa. 178), except where the legislature in creating the office pre-

scribes a different method: *Georges Township School Directors*, 286 Pa. 129; *Milford Township Supervisors' Removal*, 291 Pa. 46."

In 3 Words & Phrases, Judicially Defined, p. 2567, we find this principle stated:

"Generally the appointment to an office is an executive function. If the General Assembly should create an office by statute duly passed by it, providing that it should be filled by appointment, the act of filling such office is a partial execution of the law. It is not, however, every appointment to office which involves the exercise of executive functions; as, for instance, the appointments made by judicial officers in the discharge of their official duties, or the appointment made by the general assembly of officers necessary to enable it to properly discharge its duties as an independent legislative body and the like. Such appointments by the several departments of the state government are necessary to enable them to maintain their independent existence, and do not involve an encroachment upon the functions of any other branch. The appointment to an office where it is in no manner connected with the discharge of legislative duties involves the exercise of executive functions, which cannot be exercised by the legislative or judicial departments."

The Unemployment Compensation Act, supra, calls the Board of Review a departmental administrative board: section 203 (c). Its services obviously are administrative in character. As a part of the Department of Labor and Industry, it is an instrument of the executive, and the executive is, in fact, the power by which members have been appointed; by article VI, sec. 4, of the Constitution, supra, his discretion as to removal must govern. As stated above, there is no provision in The Unemployment Compensation Act regarding removal; even if there were such a provision, it is doubtful if it would govern since the Board of Review is not by any stretch of the imagination an arm of the legislature, but is definitely an administrative body. For the same reason, the period or

term of service designated in the act does not govern, but the Constitution, art. VI, sec. 4, does govern. The Governor is the power by which the members of the board have been appointed and, therefore, they can be removed at his pleasure or discretion.

We are of the opinion, therefore, that the members of the Board of Review are subject to the provisions of article VI, sec. 4, of the Constitution, supra, and can be removed by the Governor on his own motion and replaced by new appointees.