Commonwealth ex rel. *v.* Davis, Appellant.

Argued January 6, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Friedjoff D. Tappert,* for appellant.

*Tillman K. Saylor,* for appellee.

*Harry F. Stambaugh,* for appellant, in reply.

OPINION BY MR. JUSTICE SIMPSON, January 13, 1930:

During the term for which he was elected, Joseph Cauffiel, the mayor of the City of Johnstown, was indicted, tried and convicted, inter alia, of misbehavior in office, and a part of his sentence was that he "shall be and is hereby removed from the office of mayor of the City of Johnstown." On appeal, this sentence was affirmed by the Superior Court (97 Pa. Superior Ct. 202), and later we dismissed an application for a writ of certiorari to review its judgment: Com. v. Cauffiel, 298 Pa. 319. It follows that the entire sentence, including the removal from office, has been finally adjudged to be effective as against Cauffiel, and probably this would be held sufficient to determine the present controversy. We prefer to decide it on a broader ground, however.

Immediately before his actual incarceration, Cauffiel gave written notice to the treasurer of the city not to

pay any warrants drawn upon the funds of the city, unless they were signed by him. The law expressly provides that all such warrants must be signed by the mayor, if there is one available for the purpose, and, if not, by the superintendent of accounts and finance of the city, who is declared by section 1 of the Act of April 6, 1917, P. L. 52, 54, to be the acting mayor, whenever there arises a "vacancy in the office of mayor by death, resignation or otherwise."

Warrants for wages due the employees of the city were duly signed by all the required public officials, including the acting mayor, but not by Cauffiel; the treasurer refused to honor them because of a fear that he might be made personally responsible for any payments made by him. The Commonwealth, at the relation of the attorney general, then applied for a writ of peremptory mandamus to compel him to act. This was the appropriate remedy: Muir v. Madden, 286 Pa. 233; McKannay v. Horton, 151 Cal. 711, and note thereto in 13 L. R. A. (n. s.) 661. The treasurer admitted the facts, the court below awarded the writ, and the treasurer prosecuted the present appeal. On Cauffiel's application, he was allowed to intervene as a party appellant, and his counsel, as well as counsel for the treasurer, argued the appeal in this court; and Cauffiel as well as the treasurer will, therefore, be conclusively bound by our judgment herein.

Both base their entire argument on section 4 of article VI of the state Constitution which provides as follows: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant-Governor, members of the General

Assembly, and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." Under this section the two appellants first contend that the sweeping language of the last sentence — "all officers elected by the people ......shall be removed by the governor," etc., etc.,— means that "officers elected by the people" shall not be removed in any other way. To this we do not assent. If it were so, then neither impeachment nor quo warranto would be available, though the former is expressly provided for in the immediately preceding section of the same article of the Constitution, and it was admitted, at bar, that the latter was an available remedy in cases like the present.

The two appellants next contend that, in any event, we should hold that the constitutional provision is not self-executing, and hence, since the legislature has not acted, Cauffiel was not legally removed by the sentence of the court. To this also we do not agree. To so hold, would be to add to the "shall be removed" a provision in effect saying, "if the legislature provides a method for accomplishing that purpose, and if also the legislative mandate is carried into effect by the authority named by it." The word "shall" cannot be so minimized, and no authority has been found which suggests that it should be.

In Houseman et al. v. Commonwealth, 100 Pa. 222, 230, we said: "The fourth section of the sixth article of the new Constitution [the one under consideration] enlarges the power of removal and speaks with more certainty both as to the authority which shall be clothed with it, and the manner of its exercise. Under the new Constitution there are three kinds of removal, to wit, on conviction of misbehavior or crime, at the pleasure of the appointing power, and for reasonable cause on the address of two-thirds of the Senate. All officers are subject to the first kind, appointed officers to the second,

and elective officers to the third." Legislation is not needed to carry into effect any of these provisions. Admittedly this is so as to the second and third; it is not less so as to the first. The people in adopting the Constitution,—and it is their normal view of its language which is controlling (Long v. Cheltenham Township School District, 269 Pa. 472; Com. v. Dabbierio, 290 Pa. 174),—when considering this section, were not dealing with matters needing future action to make them effective. When they found three provisions in one section, each of which could be carried into effect without legislative action, they must have believed that it was intended that this should be done. To them it must have seemed that "on conviction" a removal "shall" result, must have meant just what it said, and not that it meant a removal not "on conviction" but at some future time, in some other proceeding than that which resulted in the conviction, and dependent on other contingencies than those appearing in the Constitution itself.

It would seem clear, also, that the able lawyers who composed, in large part, the Constitutional Convention of 1873, must have looked at the matter in exactly the same way. A careful reading of the debates in the convention shows that this part of the section was very little considered, probably because, as will be later pointed out, it is derived from the Constitution of 1838; but it was repeatedly said that the convention was "trying to provide a speedy remedy for the removal of incompetent men": 5 Convention Debates 373; 8 Conv. Deb. 124. Moreover, every lawyer in the convention knew that in practically all our crimes acts similar language appeared. These statutes, after defining the crime, say that the defendant "on conviction" shall be fined and/or imprisoned, the penalty being imposed by the court before whom the defendant was convicted. Naturally they would expect, therefore, as every one else would, that the constitutional provision providing for a specified punishment "on conviction" would be inter-

preted in exactly the same way,—the court on conviction "shall" impose the specified punishment. Especially is this true since the Constitution by article V vested all the Commonwealth's judicial power in the courts, and the punishment to be imposed "on conviction" had been imposed by the courts from the earliest days of the common law; a practice, so far as we are aware, which has never been departed from except where arbitrary power was given to or usurped by some one connected with the executive branch of government.

No case has been pointed out to us, nor have we found one, in which the exact question under consideration has been decided by this court. As we have already said, this part of article VI, section 4, is derived from the Constitution of 1838, which provides in article VI, section 9, that "All officers for a term of years shall hold their offices for the terms respectively specified, only on the condition that they so long behave themselves well; and shall be removed on conviction of misbehavior in office or of any infamous crime." This court does not seem to have been required, even under that section, to determine the exact point now being considered but in Com. v. Shaver, 3 W. & S. 338, 340, we said: "It is very clear that sheriffs, as well as all other officers holding their respective offices for a term of years only, are embraced within this provision of the Constitution, so that the respondent, though duly elected and commissioned to the office of sheriff, cannot claim to hold it after he has been convicted of misbehavior in it, or of any infamous crime." In Com. v. Harris, 1 Legal Gazette Reports 455 (1871), it was squarely determined, however. It was there said: "This section of the Constitution was before the Supreme Court of our state, in Commonwealth v. Shaver, 3 W. & S. 338. In that case, KENNEDY, J., who delivered the opinion of the court, remarked as follows: 'The point to be decided in this case arises out of the 9th section of the 6th article of the Constitution of this state, which is in the following

words.' The judge then quotes the above article and continues: 'It is very clear that sheriffs, as well as all other officers holding their respective offices for a term of years only, are embraced within this provision of the Constitution, so that the respondent, though duly elected and commissioned to the office of sheriff, cannot claim to hold it after he has been convicted of misbehavior in it, or any infamous crime. From the foregoing provision of the Constitution, and the adjudication of the Supreme Court of our state, it is very clear that the conviction of defendant of misbehavior in office requires his removal from the office of county commissioner, and that the court shall adjudge that he be removed from office.' "

Our records disclose that that case never reached this court, but, in our judgment, it correctly interprets the Constitution. True, in Com. ex rel. v. Sanderson, 1 Pa. Dist. R. 714, 718, doubts are expressed as to the conclusion reached in it, and it is suggested that in some cases, as, for instance, where an incumbent is convicted of an infamous crime not connected with the office he holds, legislation may be needed to carry the constitutional provision into effect. That opinion is quoted and followed in Bowman's Case, 18 Pa. Dist. R. 326, but this was revised in Bowman's Case, 225 Pa. 364, and we there said, at page 367, that "A constitutional direction as to how a thing is to be done is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient." Moreover, if those lower court decisions were accepted as correct, they would not affect the present suit, since the record of the case in which Cauffiel was convicted shows it was because of "misbehavior in office," and no legislation can possibly be needed to bring that fact on the record,—it is already there.

In an attempt to buttress their contention, the two appellants refer to general language appearing in certain of our opinions, which they seek to make available here, although the facts in those cases and the point

there involved, have no relation whatever to the present situation. We have many times said that the language used by us cannot thus be made applicable to facts essentially different from those being considered when the opinions were rendered: Com. v. Budd Wheel Co., 290 Pa. 380; Camden Safe Deposit & Trust Co. v. Eavenson, 295 Pa. 357, 363. A single illustration of appellants' erroneous reasoning in this respect will suffice. In Com. ex rel. v. Reid, 265 Pa. 328, the common council of a borough attempted to remove the burgess from office. The court below decided that there was no statute which gave them the right so to do, but sustained their action on the ground that such a power was inherent in the council. We overruled this conclusion, saying at pages 334-5: "The municipalities of the state are not remediless, however, if important reasons exist why their executives should be removed, for by article VI, section 4, of the Constitution, it is provided as follows: [here we quote the section in full, exactly as above set forth]. That section applies to municipal officers: Houseman v. Com., 100 Pa. 222, 229; Richie v. Phila., 225 Pa. 511, 514; and the municipalities of the state must be satisfied with the methods and causes of amotion therein provided, until and unless the legislature, in its wisdom, shall add thereto." It will be observed, however, we were there dealing with a case where there was an entire absence of a power of removal, while here there is admittedly an express constitutional duty to remove, the only question being by whom, and in what way, it shall be exercised. This distinction we pointed out in Milford Township Supervisor's Removal, 291 Pa. 46, 52, and need not refer to it further.

Upon the point now being considered we are clear, therefore, that the penalty of removal was constitutionally imposed as a necessary result of the conviction, and hence was properly included in the sentence by the court before which the conviction was had.

The judgment of the court below is affirmed.